UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TALBERT HINTON | : | |
| | : | |
| Petitioner, | : | Civ. No. 18-14508 (PGS) |
| | : | |
| v. | : | |
| | : | |
| ATTORNEY GENERAL OF THE STATE | : | **OPINION** |
| OF NEW JERSEY, | : | |
| | : | |
| Respondent. | : | |

**PETER G. SHERIDAN, U.S.D.J.**

### I.      INTRODUCTION

Petitioner, Talbert Hinton ("Petitioner" or "Hinton"), is a state prisoner proceeding *pro se*

with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons,

the habeas petition is denied and a certificate of appealability shall not issue.

### II.      FACTUAL AND PROCEDURAL BACKGROUND

The factual background giving rise to Petitioner's judgment of conviction was stated by

the New Jersey Superior Court, Appellate Division during Petitioner's direct appeal as follows:

> In December 2012, then five-year old Lisa [FN 1] went to
> McDonald's with defendant, her mother's friend. Lisa testified after
> she finished her meal, defendant drove her to his grandmother's
> home. While she sat on a bed and listened to music, defendant took
> off his pants but not his underwear. He then took her leggings
> down to her knees, but left her underwear intact.
>
> [FN1] The child's name is a pseudonym to protect her privacy.
>
> Lisa stated defendant then got on top of her, as she lay face down.
> She felt his chest touch her back and his stomach touch her
> buttocks. She began to cry, because she believed she would get in
> trouble with her mother for not returning home as soon as she
> finished eating at McDonald's. Defendant then got off of her and,
> after she pulled her leggings up, took her home. Lisa testified the

first person she told about the incident was her teacher, because the child found the teacher trustworthy and had a good relationship with her.

During a videotaped interview conducted by a detective of the Monmouth County Prosecutor's Office, which was viewed by the jury, Lisa stated while at his grandmother's home, defendant pulled her pants and underwear down to her knees. As a result, she started to cry and told him to stop. However, he then touched her buttocks with his penis and was moving it "back and up." She described his penis as hard and, at one point, inserted it "inside [my] butt," which hurt "a little bit." He then stopped and, after getting her a "rag" to dry her face, drove her home.

Lisa's teacher testified that, in June 2013, she sat next to Lisa on a bus, which was taking Lisa's entire Kindergarten class on a field trip to a park. Lisa spontaneously said she had gone to a McDonald's with a "mean and nasty" man, who later took her to his grandmother's home, where he pulled down her underwear. The child further stated she started to cry and told him to stop, so he took her home.

After arriving at the park, the teacher approached the teacher assistant for the Kindergarten class and told her to talk to Lisa; the teacher could not recall if she informed the assistant what Lisa had related to her. Finally, the teacher testified that, after the Christmas vacation in 2012, the child was "a little withdrawn" and "not as eager to participate."

The teacher assistant testified she asked Lisa what she had talked about with the teacher. Lisa reported her mother's friend took her to McDonald's and then to his home. While there, he took off his and her clothes, and rubbed his body against hers. The assistant also testified that after the Christmas vacation in 2012, the child had an "attitude" and would get "upset about anything." The teacher and the assistant reported the child's comments to the school principal, who contacted the police.

Lisa was treated by a pediatrician who focuses her practice on children who allegedly have been abused. The pediatrician testified the child told her an adult named "Tal" took her to his grandmother's home and asked her to lie down on her stomach. He then put his penis on top of her buttocks, which "hurt a little." Lisa also told the pediatrician she was concerned about physical abuse between her mother and stepfather, and further mentioned her mother had hit her with a belt, but stated the belt did not cause

any injuries or marks. In fact, Lisa stated she had never been physically abused by an adult in her home. The pediatrician testified she did not have any concern the child was being abused in her home.

The pediatrician further testified that Lisa's mother informed her the child's behavior changed after the time of the subject incident. Lisa's mother related to the pediatrician that Lisa became defiant, continued to do well academically. The doctor commented exposure to domestic violence can cause behavioral changes, including becoming more defiant.

Lisa's mother also testified. She stated around Christmas 2012, she consented to defendant taking Lisa to McDonald's for lunch. The mother recalled they had been gone for a long period of time and she became worried, but Lisa did come home that afternoon and reported she had had fun while she was out.

Months later, the mother received a call from the teacher assistant; following that call, the mother asked Lisa what she had reported to the teacher and the teacher assistant. The child said defendant took her to his mother's house, pulled her pants and underwear down, made her lie on the bed, laid on top of her, and rubbed his penis on her buttocks.

During cross-examination, defense counsel broached the subject of domestic violence between the mother and Lisa's stepfather. The State objected, and during a sidebar conference defense counsel explained she wanted to "infer possible third-party guilt" by suggesting another in Lisa's home had abused the child. The court sustained the objection, noting there was no evidence the step-father or any third party committed the acts about which Lisa complained.

The defense attorney then advised the court she wished to question the mother about hitting the child with a belt, to suggest the change in the child's demeanor around the time of the subject incident was the result of her mother's abuse. The court sustained the State's objection, noting there was no evidence the mother caused the child to sustain any injury when she hit Lisa with a belt, not to mention there was no evidence a female committed the alleged acts of sexual abuse. The court also expressed concern defense counsel's questions would necessitate the mother asserting her Fifth Amendment [FN 2] rights in the presence of the jury. During her summation, defense counsel argued there was insufficient proof defendant committed the alleged offense, and

3

emphasized the inconsistencies among the child's reports of the incident rendered her claim of sexual assault untrustworthy.

[FN 2] *U.S. Const.* amend. V.

*State v. Hinton*, No. A-5529-14T4, 2017 WL 3974410, at *1–2 (N.J. Super. Ct. App. Div. Sept. 11, 2017).

> [A] jury acquitted defendant Talbert D. Hinton of first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2(a)(1), but convicted him of second-degree sexual assault, *N.J.S.A.* 2C:14–2(b), and endangering the welfare of a child, *N.J.S.A.* 2C:24–4(a). In the aggregate, he was sentenced to an eighteen-year extended term of imprisonment, subject to an eighty-five percent period of parole ineligibility.

*Hinton*, 2017 WL 3974410, at *1. Petitioner filed a direct appeal to the Appellate Division raising the following claims:

> POINT I—THE TRIAL JUDGE IMPROPERLY PERMITTED THE FRESH–COMPLAINT WITNESS TO TESTIFY AS TO THE DETAILS OF THE ALLEGED ASSAULT, PROVIDED THE JURY WITH AN UNNECESSARY AND MISLEADING INSTRUCTION ON THE TENDER–YEARS HEARSAY EXCEPTION, AND PERMITTED THE STATE TO IMPROPERLY BOLSTER [THE CHILD'S] CREDIBILITY BY ALLOWING IT TO PRESENT NEEDLESSLY CUMULATIVE EVIDENCE OF [THE CHILD'S] ALLEGATIONS AGAINST DEFENDANT. THE COMBINATION OF THESE ERRORS DEPRIVED DEFENDANT OF A FAIR TRIAL.
>> A. The Judge Failed To Limit [The Teacher Assistant] Fresh–Complaint Testimony To General Information About [the Child's] Complaint To Her.
>> B. The Judge Improperly Issued A Jury Instruction On Tender–Years Testimony That Was Likely To Have Misled And Confused The Jury.
>> C. In Addition To The Victim's Testimony, The Judge Permitted Three Hearsay Statements Under The Tender–Years Hearsay Exception, One Hearsay Statement Under The Fresh–Complaint Doctrine, And Testimony About The Reported Incident From The Treating Doctor, Resulting In Cumulative Evidence That Improperly Bolstered The Victim's Testimony and Prejudiced Defendant.

4

POINT II—THE TRIAL COURT VIOLATED DEFENDANT'S
CONSTITUTIONAL RIGHT TO PRESENT A COMPLETE
DEFENSE BY PROHIBITING COUNSEL FROM ASKING THE
VICTIM'S MOTHER ABOUT VIOLENCE IN THE HOME,
WHICH SERVED AS AN ALTERNATIVE EXPLANATION
FOR THE VICTIM'S PURPORTED BEHAVIORAL CHANGES
AFTER THE INCIDENT.

POINT III—THIS CASE SHOULD BE REMANDED FOR
RESENTENCING BECAUSE THE SENTENCING COURT
IMPROPERLY WEIGHED THE AGGRAVATING AND
MITIGATING FACTORS, RESULTING IN AN EXCESSIVE
SENTENCE.

*Hinton*, 2017 WL 3974410, at *2–3. The Appellate Division affirmed the judgment of conviction

on direct appeal. *See id.* at *6. The New Jersey Supreme Court denied certification on

Petitioner's direct appeal. *See State v. Hinton*, 180 A.3d 700 (N.J. 2018). The United States

Supreme Court denied Petitioner's request for a writ of certiorari. *See Hinton v. New Jersey*, 139

S. Ct. 1348 (2019).

In October, 2018, Petitioner filed this federal habeas petition. (*See* ECF 1). Petitioner

raises the following claims in his habeas petition:

1.  The trial court violated Petitioner's constitutional rights by preventing counsel from

    cross-examining the victim's mother about violence in the home which would have

    served as an alternative explanation for the victim's change in behavior ("Claim I").

2.  The trial court improperly: (1) allowed a fresh-complaint witness to testify on the details

    of the assault; (2) provided the jury with an unnecessary and misleading tender years

    instruction; and (3) permitted unnecessary cumulative evidence ("Claim II").

3.  The sentencing court improperly weighed the aggravating and mitigating factors which

    led to an excessive sentence ("Claim III").

Respondent filed a response in opposition to the habeas petition. (*See* ECF 6 & 7). The matter is now ready for adjudication.

## III.    LEGAL STANDARD

A writ of habeas corpus for a person in custody under judgment of a state court can be granted only for violations of the Constitution, laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Because Petitioner filed his petition for writ of habeas corpus after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). Having identified the governing principle of federal law, a habeas court must also ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its

6

independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

The AEDPA standard under § 2254(d) is a "difficult" one to meet; it is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (federal courts should "look through" later unexplained state court orders to find the last related state court decision that does provide a relevant rationale); *Blystone v. Horn*, 664 F.3d 397, 417 n.15 (3d Cir. 2011). Furthermore, though AEDPA deference remains appropriate even as to summary state court rulings, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

## IV.   DISCUSSION

A. <u>Claim I</u>

Claim I raises the same claim Petitioner raised in Point II on direct appeal. The last

reasoned decision on this claim was from the Appellate Division which analyzed it as follows:

> Defendant contends the court erred by precluding him from cross-
> examining the mother on whether the stepfather had been violent
> toward her, and on the mother's use of a belt to punish Lisa. We
> reject defendant's argument, substantially for the reasons expressed
> by the trial court.
>
> "The scope of cross-examination is a matter resting in the broad
> discretion of the trial court." *State v. Martini*, 131 *N.J.* 176, 255
> (1993). Accordingly, it is "well settled" that the "scope of cross-
> examination is a matter for the control of the trial court[,] and an
> appellate court will not interfere with such control unless clear
> error and prejudice are shown." *Id.* at 263–64 (quoting *State v.
> Murray*, 240 *N.J. Super.* 378, 394 (App. Div. 1990)).
>
> As observed by the trial court, there was no evidence the stepfather
> or any third party committed the acts about which Lisa
> complained; therefore, evidence of domestic violence between the
> mother and stepfather was irrelevant. Further, to the extent
> defendant sought to show witnessing domestic violence can affect
> a child's behavior and, thus, the observed change in Lisa's behavior
> may not have been caused by his alleged conduct, defendant
> effectively cross-examined the pediatrician on the point domestic
> violence can make a child defiant.
>
> As for the mother's use of a belt to discipline the child, first, there
> was no evidence the mother committed the acts with which
> defendant was charged. Second, there was no expert testimony to
> substantiate the use of the belt caused or could have caused the
> change in the child's behavior, not to mention the child herself said
> she was not injured as a result of her mother's use of a belt. Finally,
> the pediatrician testified she was not concerned the child was being
> abused at home.
>
> Accordingly, we are satisfied the trial court's decision to limit
> defendant's cross-examination on these issues did not prejudice
> defendant.

*Hinton*, 2017 WL 3974410, at *5.

8

At the outset, it is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers,* 497 U.S. 764, 680 (1990)). Nevertheless, Claim I implicates two possible constitutional rights, due process and the Confrontation Clause. For a petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *See Keller v. Larkins,* 251 F.3d 408, 413 (3d Cir. 2001) (holding that admission of evidence may violate due process where the evidence is so inflammatory as to "undermine the fundamental fairness of the entire trial"); *see also Cox v. Warren,* No. 11–7132, 2013 WL 6022520, *8 (D.N.J. Nov. 13, 2013). Furthermore,

> an accused has the right under the Due Process Clause "to confront the prosecution's witnesses for the purpose of challenging their testimony [and] the right to present his own witnesses to establish a defense." *Washington v. Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L.Ed.2d 1019 (1967). But "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois,* 484 U.S. 400, 410, 108 S. Ct. 646, 98 L.Ed.2d 798 (1988).

*Washington v. Ricci*, 631 F. Supp. 2d 511, 520 (D.N.J. 2008).

With respect to the Confrontation Clause:

> The Confrontation Clause of the Sixth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. [a]mend. VI. This right to confrontation includes the right to cross-examine those witnesses. *Vreeland v. Warren,* No. 11–5239, 2013 WL 1867043, at *14 (D.N.J. May 2, 2013); *see also Smith v. Illinois,* 390 U.S. 129, 131 (1968). This right, however is not without its limits:

> "the Confrontation Clause guarantees an
> opportunity for effective cross-examination, not
> cross-examination that is effective in whatever way,
> and to whatever extent, the defense might wish."
> *Delaware v. Fensterer,* 474 U.S. 15, 20 [(1985)].
> Thus, the scope of cross-examination regarding a
> particular line of inquiry falls necessarily "within
> the sound discretion of the trial court," and "it may
> exercise a reasonable judgment in determining
> when [a] subject is [inappropriate]." *Alford [v.
> United States],* 282 U.S. [687, 694 (1931)]. "[T]rial
> judges retain wide latitude ... to impose reasonable
> limits on such cross-examination based on concerns
> about, among other things, harassment, prejudice,
> confusion of the issues, the witness'[s] safety, or
> interrogation that is repetitive or only marginally
> relevant." *Delaware v. Van Arsdall,* 475 U.S. 673,
> 679 [ (1986) ].
>
> *Vreeland,* 2013 WL 1867043 at *15. Both the New Jersey and
> Federal Rules of Evidence likewise establish that the scope of
> cross-examination should generally be limited to the subject matter
> raised in direct examination and issues affecting the credibility of
> the witness, and that scope may only be expanded where the trial
> court so permits in its discretion. *See* N.J.R.E. 611(b); Fed. R.
> Evid. 611(b).

*Thomas v. Warren,* No. 12-2047, 2015 WL 6507833, at *12 (D.N.J. Oct. 26, 2015)

To the extent Petitioner asserts that the state court erred as a matter of state law in limiting how counsel could cross-examine the victim's mother, such a claim is not cognizable on federal habeas review. *See Estelle,* 502 U.S. at 67-68.

Next, the state court's limitation on the cross-examination of the victim's mother was not contrary to or an unreasonable application of clearly established federal law. As indicated above, the trial court determined that there was no evidence that any third-party committed the sexual acts against the victim. Dr. Medina noted during her testimony that she was not concerned about the victim being abused in the home. (*See* ECF 6-12 at 12). The victim did though tell Dr. Medina that her mother hit her with a belt but did not cause marks on her body or injury. (*See*

10

*id*). It was determined Petitioner raising the issues Petitioner's counsel wanted to raise with the mother on cross-examination was therefore irrelevant.

Additionally, Petitioner was not completely prevented from exploring some of these issues. Indeed, Dr. Medina's testimony discussed some of the issues Petitioner wanted to present. For example, on direct, Dr. Medina testified that the victim was worried about the domestic violence she saw in the home between her mother and her boyfriend. (*See* ECF 6-12 at 12). Petitioner was also able to question Dr. Medina on cross-examination that a child may become more defiant upon seeing domestic violence in the home. (*See id.* at 18).

Petitioner's due process and Confrontation Clause rights were not violated by the state court's decision to limit Petitioner's cross-examination of the victim's mother. *Cf., United States v. Oliva*, 790 F. App'x 343, 351 (3d Cir. 2019) (where line of questioning prevented by trial court was irrelevant to any material issue, Confrontation Clause not violated). Given irrelevancy as well as the fact that some of these issues were addressed during Dr. Medina's testimony, limiting cross-examination of the mother did not run afoul of clearly established due process or the Confrontation Clause. Claim I is denied.

B.  <u>Claim II</u>

Petitioner raises the same arguments in Claim II he made in Point I on direct appeal. The claim itself contains three sub-claims; namely: (1) trial court error in failing to limit fresh complaint testimony; (2) jury instruction error on the tender years' exception to hearsay; and (3) cumulative testimony violated Petitioner's constitutional rights. Each of these sub-claims is considered in turn.

i. *Failure to Limit Fresh Complaint Testimony*

The last reasoned decision on Petitioner's argument that the trial court failed to limit

fresh complaint testimony is from the Appellate Division which analyzed this claim as follows:

> We first address defendant's contention the court erred when it
> failed to limit the teacher assistant's testimony, which both parties
> regarded as fresh complaint testimony. As stated above, the
> assistant testified the child informed her that, after her mother's
> friend took her to McDonald's, he then took her to his home. While
> there, he took off his and her clothes, and rubbed his body against
> hers.
>
> The fresh complaint doctrine is one that "allows the admission of
> evidence of a victim's complaint of sexual abuse, otherwise
> inadmissible as hearsay, to negate the inference that the victim's
> initial silence or delay indicates that the charge is fabricated." *State
> v. R.K.*, 220 *N.J.* 444, 455 (2015). However, "[o]nly the facts that
> are minimally necessary to identify the subject matter of the
> complaint should be admitted." *Id.* at 456. When admitting fresh
> complaint evidence, a trial court should make clear to a jury such
> evidence should not be considered to "bolster [a] victim's
> credibility or prove the underlying truth of [ ] sexual assault
> charges," but rather used only for the narrow purpose of
> "dispel[ing] [a negative] inference [from] the victim['s]" silence.
> *State v. Bethune*, 121 *N.J.* 137, 148 (1990).
>
> Defendant contends the teacher assistant's testimony should have
> been limited to the fact the child complained to her and the
> "general substance of the complaint—that someone inappropriately
> touched her." In addition, defendant points out the court failed to
> give a limiting instruction at the time of the assistant's testimony.
> First, the limited details the teacher assistant provided were not
> more than necessary to identify the subject matter of the child's
> complaint. Although our courts have disallowed "excessive
> details," *see State v. Bethune*, 121 *N.J.* 137, 147 (1990), "[o]ur
> courts have been consistent in allowing fresh-complaint witnesses
> to provide enough basic information that the jury will have a sense
> of the complaint's context." *State v. R.K.*, 220 *N.J.* 444, 459
> (2015).
>
> In *State v. Balles*, 47 *N.J.* 331 (1966), the victim's mother testified
> the victim had disclosed to her the defendant "put his hands down
> her panties and had touched here." *Id.* at 339. Our Supreme Court
> determined the mother's testimony was not improper under the

> fresh complaint doctrine, as she did not "elaborate and could
> hardly have said less and still identified the nature of [the victim's]
> complaint." *Ibid.*
>
> Here, as for the illicit act itself, the assistant merely testified the
> child said defendant took off her and his clothes, and rubbed his
> body against hers. These few details were necessary to provide the
> minimal information necessary to enable the jury to have a "sense
> of the complaint's context," and were analogous to those provided
> by the fresh complaint witness and found acceptable by the Court
> in *Balles*.
>
> Second, the court did provide the appropriate limiting instruction
> in its final charge to the jury, thoroughly explaining the limited
> nature of fresh complaint testimony. There is no requirement such
> instruction be provided at the time fresh complaint testimony is
> admitted. *See State v. Hummel*, 132 *N.J. Super.* 412, 424 (App.
> Div. 1975). Accordingly, we conclude there is no merit to
> defendant's contention the court erred by allowing the admission of
> the teacher assistant's testimony and by failing to provide a
> limiting instruction at the time such testimony was provided.

*Hinton*, 2017 WL 3974410, at *3-4.

To the extent that Petitioner argues that the state court erred as a matter of state law within this sub-claim, it is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68. Furthermore, Petitioner fails to show that permitting this testimony from the teacher's assistant at trial caused his trial to become fundamentally unfair. The teaching assistant's testimony was fairly limited as noted by the Appellate Division. Specifically, the teaching assistant testified that the victim told her that the man took off her clothes, took off his clothes and began rubbing his body against hers. (*See* ECF 6-11 at 41). Additionally, the trial judge issued a limiting instruction on fresh complaint testimony during its final charge to the jury. More specifically, the trial court instructed the jury that:

> the narrow purpose of the fresh complaint rule is to allow the state
> to introduce evidence to negate any inference that [the victim]
> failed to tell anyone about the sexual offense and that, therefore,
> her later assertion could not be believed. [¶]A fresh complaint is

not evidence that the sexual offense actually occurred, or that [the victim] is credible. It merely serves to negate any inference that because of her assumed silence the offense did not occur. It does not strengthen her credibility. It does not prove underlying truth of the sexual offense. A fresh complaint only dispels any negative inference that might be made by her assumed silence.

. . . .

As I've indicated earlier, this testimony was permitted for a limited purpose. The making of a complaint is not an element of the offense. Proof that a complaint was made is neither proof that the sexual offense occurred, nor proof that La'niyah Tatum was truthful. It merely dispels any negative inference that might arise from her assumed silence. It eliminates any negative inference that her claims of having been sexually assaulted are false because of her assumed failure to have confided in anyone about the sexual offense.

(ECF 6-13 at 48, 49). The jury is presumed to have followed these instructions from the trial

judge. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Finally, the victim herself testified at

trial which allowed Petitioner to directly cross-examine her and thereby permit the jury to weigh

her credibility. (*See* ECF 6-11 at 14-28). Given these circumstances, Petitioner fails to show the

denial of this sub-claim was contrary to or an unreasonable application of clearly established

federal law. Therefore, it is denied.

ii.     *Tender Years Jury Instruction*

Petitioner next argues that the trial court's tender year's jury instruction was unnecessary

and misleading. The Appellate Division analyzed this claim as follows:

Defendant next contends the court issued a jury instruction on tender years testimony that likely misled and confused the jury. Before trial, the court determined the proffered testimony of the mother, teacher and detective was admissible under the tender years exception. Defendant does not challenge this ruling, or that these witnesses' testimony was substantive evidence. The defendant complains the final jury instruction on tender years testimony was given immediately following the instruction on fresh complaint testimony, and thus may have confused the jury on how to use these two different kinds of testimony.

> We have examined the jury charge and find no merit to the
> contention the charge was confusing or could have misdirected the
> jury on how to consider and apply these two forms of testimony.
> The court distinguished fresh complaint from tender years
> testimony and clearly instructed the jury how it was to consider
> each kind of testimony.

*Hinton*, 2017 WL 3974410, at *4.

Habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights. *See Echols v. Ricci,* 492 F. App'x 301, 312 (3d Cir. 2012) (citing *Estelle v. McGuire,* 502 U.S. 62, 71–72 (1991) (holding that "[t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process")); *see also Middleton v. McNeil,* 541 U.S. 433, 437 (2004) (same). Furthermore, "'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)).

Upon review of the state court's jury instructions, this Court agrees with the Appellate Division that the jury instructions were not confusing or had the capacity to mislead the jury. At a minimum, Petitioner fails to show that the state court's denial of this sub-claim was contrary to or an unreasonable application of clearly established federal law or that the decision was based on an unreasonable determination of the facts. Accordingly, habeas relief is not warranted on this sub-claim.

### iii.   *Cumulative Witness Testimony*

In Petitioner's third and final sub-claim within Claim II, he asserts that the trial court needlessly permitted cumulative evidence against him which denied him a fair trial. The Appellate Division analyzed this argument as follows:

In argument Point I(c), defendant maintains the court erred by admitting: (1) the teacher assistant's testimony under the fresh complaint doctrine; (2) the teacher's, detective's, and mother's testimony under the tender years exception; and (3) the testimony from Lisa's treating pediatrician. Defendant does not challenge the fact each witness's testimony was separately admissible under one rule of law or another. The claimed error is the testimony from all of these witnesses improperly bolstered the victim's testimony. That is, collectively, the admission of these witnesses' testimony had the cumulative effect of bolstering the victim's testimony and thus prejudiced him. We disagree.

First, this particular issue was not raised before the trial court. Defendant did move before trial to exclude the testimony of the mother, teacher, and detective under the tender years exception, but he did not seek the exclusion of such testimony under *N.J.R.E.* 403. Therefore, our review of defendant's argument is guided by the plain error rule. *R.* 2:10–2; *see also State v. Miraballes*, 392 *N.J. Super.* 342, 360 (App. Div.), *certif. denied*, 192 *N.J.* 75 (2007).

Under the plain error rule, any error will be disregarded unless "clearly capable of producing an unjust result." *State v. Feaster*, 156 *N.J.* 1, 71 (1998). Reversal based on plain error requires us to find the error is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." *State v. Williams*, 168 *N.J.* 323, 336 (2001) (quoting *State v. Macon*, 57 *N.J.* 325, 336 (1971)). We may also infer from the lack of an objection defense counsel recognized the alleged error was of no moment or was a tactical decision to let the error go uncorrected at the trial. *Macon, supra*, 57 *N.J.* at 337.

Second, the child's report of what occurred varied from one person to another; thus, collectively, the subject testimony did not bolster the victim's testimony. In fact, defense counsel emphasized the inconsistencies in the child's reports in her cross-examination of some of the witnesses. During counsel's summation, she highlighted the key differences in the child's reports to each adult, arguing the child's inconsistent reports made her untrustworthy.

Moreover, significantly, while the jury convicted defendant of second-degree sexual assault, *N.J.S.A.* 2C:14–2(b), specifically, sexual contact, as well as endangering the welfare of a child, *N.J.S.A.* 2C:24–4(a), the jury acquitted defendant of first-degree aggravated sexual assault, *N.J.S.A.* 2C:14-2(a)(1). The State failed to prove beyond a reasonable doubt defendant committed an act of

> sexual penetration upon the child. Clearly, the jury rejected the
> child's reports of anal penetration. Given the inconsistencies in the
> child's reports as provided through the subject witnesses'
> testimony, which defendant deftly utilized to further his defense—
> a strategy that succeeded in the acquittal of the most serious
> charge—, we cannot conclude there was plain error in the
> admission of the testimony about which defendant complains.

*Hinton*, 2017 WL 3974410, at *4–5.

To the extent this sub-claim asserts an error of state law, it is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68. Furthermore, Petitioner fails to show that the state court's denial of this claim was contrary to, or an unreasonable application of clearly established federal law. A trial court is afforded wide discretion in determining whether to permit cumulative testimony. *See Howard v. McGinnis*, 632 F. Supp. 2d 253, 275 (W.D.N.Y. 2009) (citations omitted). Additionally, as aptly noted by the Appellate Division, Petitioner was able to emphasize various inconsistencies in the victim's statements she gave others who testified at trial. Indeed, during summation, counsel stated the following, "[t]here is no evidence in this case, just words. Words that are changed and changed and changed." (*See* ECF 6-13 at 37). For these reasons, Petitioner fails to show that he is entitled to federal habeas relief on this sub-claim. Accordingly, Claim II is denied.

C. Claim III

In Claim III, Petitioner asserts that eighteen-year sentence was excessive. The Appellate Division analyzed this claim as follows:

> Finally, defendant argues this matter must be remanded for
> resentencing because the court improperly weighed the
> aggravating and mitigating factors, resulting in an excessive
> sentence. We disagree.
>
> An appellate court reviews a sentence under a deferential standard.
> *State v. Fuentes*, 217 *N.J.* 57, 70 (2014). Our "review of sentencing
> decisions is relatively narrow and is governed by an abuse of

discretion standard." *State v. Blackmon*, 202 *N.J.* 283, 297 (2010). "In conducting the review of any sentence, appellate courts always consider whether the trial court has made findings of fact that are grounded in competent, reasonably credible evidence and whether 'the factfinder [has] appl[ied] correct legal principles in exercising its discretion.' " *Ibid.* (alterations in original) (quoting *State v. Roth*, 95 *N.J.* 334, 363 (1984)).

The traditional articulation of this standard limits our review to situations where application of the facts to the law has resulted in a clear error of judgment leading to sentences that "shock the judicial conscience." *Roth*, *supra*, 95 *N.J.* at 364–65. If the sentencing court has not demonstrated a clear error of judgment or the sentence does not shock the judicial conscience, appellate courts are not permitted to substitute their judgment for that of the trial judge. *Ibid.*

Here, the trial court found aggravating factors three, *N.J.S.A.* 2C:44–1(a)(3) (the risk of re-offending); six, *N.J.S.A.* 2C:44–1(a)(6) (the extent and seriousness of defendant's prior record); and nine, *N.J.S.A.* 2C:44–1(a)(9) (the need to deter defendant and others from violating the law). The trial court noted defendant, only age thirty-five at the time of sentencing, had already been convicted of thirteen indictable and ten Municipal Court offenses.

It is evident from the record defendant has previously had the benefit of probationary sentences, but to no avail. He reoffended and was subsequently imprisoned, only to reoffend again. The three aggravating factors found by the court to exist in this matter are supported by the credible evidence. We are unpersuaded that it is either necessary or appropriate for us to intervene and adjust this sentence.

*Hinton*, 2017 WL 3974410, at *5–6.

"A federal court's ability to review state sentences is limited to challenges based upon proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies.'" *Merritt v. Bartkowski*, No. 11–3756, 2013 WL 4588722, at *15 (D.N.J. Aug. 28, 2013) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted)). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984). *See also* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 62, 67.

18

*Burns v. Warren*, No. 13–1929, 2016 WL 1117946, at *43 (D.N.J. Mar. 22, 2016). With respect

showing that a sentence is cruel and unusual,

> [t]he Supreme Court has explained that the "Eighth Amendment,
> which forbids cruel and unusual punishments, contains a narrow
> proportionality principle that applies to non-capital sentences."
> *Ewing v. California,* 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155
> L.Ed.2d 108 (2003) (citations omitted). A court must consider
> three proportionality factors when evaluating Eighth Amendment
> challenges: (1) the gravity of the offense and the harshness of the
> penalty; (2) the sentences imposed on other criminals in the same
> jurisdiction; and (3) the sentences imposed for commission of the
> same crime in other jurisdictions. *Solem v. Helm,* 463 U.S. 277,
> 290–92, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983). In
> conducting this analysis, a court grants substantial deference to
> legislative decisions regarding punishments for crimes. *United
> States v. Rosenberg,* 806 F.2d 1169, 1175 (3d Cir.1986);
> *Miknevich,* 638 F.3d at 186 ("Generally, a sentence within the
> limits imposed by statute is neither excessive nor cruel and unusual
> under the Eighth Amendment ... because we accord substantial
> deference to Congress, as it possesses broad authority to determine
> the types and limits of punishments for crimes.").
>
> The first factor acts as a gateway prong to the proportionality
> inquiry. The Eighth Amendment, after all, only forbids sentences
> that are "grossly disproportionate" for a conviction for the crime
> involved. If the defendant fails to demonstrate a gross imbalance
> between the crime and the sentence, a court's analysis of an Eighth
> Amendment challenge is at an end. Successful proportionality
> challenges in non-capital cases are "exceedingly rare." *Ewing,* 538
> U.S. at 21, 123 S. Ct. at 1185 (quoting *Rummel v. Estelle,* 445 U.S.
> 263, 272, 100 S. Ct. 1133, 1138, 63 L. Ed. 2d 382 (1980)).

*United States v. Burnett,* 773 F.3d 122, 136–37 (3d Cir. 2014).

Petitioner fails to show that the denial of this claim was contrary to or an unreasonable

application of clearly established federal law. His only argument is that his sentence is excessive

because the state court improperly weighed the aggravating and mitigating factors. However, this

in and of itself does not appear to state a constitutional claim. *See Black v. Nogan,* no. 16-8498,

2019 WL 6715127, at *28 (D.N.J. Dec. 9, 2019) (quoting *Jenkins v. Bartkowski,* No. 10-4972,

2014 WL 2602177, at *21 (D.N.J. June 11, 2014)) (challenge to sentencing for failure of court to properly weigh mitigating and aggravating factors not reviewable in federal habeas proceeding brought pursuant to § 2254); *Fisher v. Ryan*, No. 12-2307, 2013 WL 2390268, at *4 (D. Ariz. May 30, 2013) (claim that state sentencing court failed to properly weigh mitigating and aggravating factors not cognizable on federal habeas corpus review).

Additionally, even if this Court were to construe Claim III as containing a constitutional dimension, Petitioner still fails to show that he is entitled to federal habeas relief. Petitioner was convicted of a crime in the second-degree and was sentenced to an extended term. In New Jersey, this called for a sentence between ten and twenty years. *See* N.J. Stat. Ann. § 2C:43-7(a)(3). Petitioner was sentenced to eighteen years imprisonment, or within the statutory range for an extended term. Accordingly, he fails to show that his sentence runs afoul of the Eighth Amendment.[1] *See, e.g., Burtrim v. D'Ilio*, No. 14-4628, 2018 WL 1522706, at *17 (D.N.J. Mar. 28, 2018) (denying federal habeas relief on excessive sentence claim noting petitioner's sentence fell within statutory limits). Therefore, Claim III is denied.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

---

[1] Petitioner does not assert that the state court's finding on an extended term due to his prior convictions was based on an unreasonable determination of the facts. Indeed, the sentencing court adequately explained the facts supporting applying an extended term to Petitioner. (*See* ECF 6-14 at 17-18).

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, this Court finds that a certificate of appealability shall not issue in this case.

## VI.   CONCLUSION

For the foregoing reasons, the habeas petition is denied and a certificate of appealability shall not issue. An appropriate order will be entered.


DATED: ~~October 28,~~ Nov 3 2020

_____
PETER G. SHERIDAN
United States District Judge